## GULLEY *v.* BACHE.

### Opinion delivered April 10, 1911.

1. APPEAL AND ERROR—ABANDONMENT OF CROSS APPEAL.—A cross appeal which is not argued by the cross appellant will be treated as abandoned. (Page 587.)

2. DEPOSITION—ADMISSIBILITY IN ANOTHER SUIT.—In order that a deposition taken in one suit may be admissible in another suit, it must appear that the latter suit is between the same parties and regarding the same issues. (Page 589.)

Appeal from Sebastian Chancery Court; *J. V. Bourland,* Chancellor; affirmed.

#### STATEMENT BY THE COURT.

The plaintiff, Boyce L. Gulley, trustee, instituted this action in the chancery court against Franklin Bache to recover an unpaid stock of the face value of $5,000 in the Witteville Coal Company, for which it is alleged the defendant subscribed, and upon which it is alleged he has only paid $2,000, leaving an unpaid balance of $3,000.

The Witteville Coal Company was a corporation organized on the 22d day of December, 1906, in the Indian Territory under an act of Congress approved February 18, 1901. One hundred

shares of stock of the value of $25 each was subscribed and paid up. The names of the subscribers, and the number of shares subscribed by each are as follows: H. J. Fowler, 20 shares; G. H. Witte, 20 shares; Joseph M. Spradling, 39 shares; Heber Denman, 20 shares; Geo. W. Dodd, 1 share.

The object of the corporation was to buy, own, lease and sell coal and other lands; to operate coal mines and deal in general merchandise. During the first year of the organization, defendant purchased for $500 a one-fifth interest in the corporation, and thereafter assisted in conducting the business of the corporation in the venture. No shares of stock were issued to him. In a few months thereafter, the company ceased to do business and distributed its assets. Defendant received his $500 back and $200 profits.

In the first part of July, 1907, Witte, Spradling and Fowler determined to begin the operation of a coal mine at Panama, Okla., which also had on hand a stock of goods, valued at $5,000. They leased the property and bought the stock of goods for $5,000 in the name of the Witteville Coal Company. On the 2d day of July, 1907, the board of directors passed a resolution, reciting that the authorized capital stock of the corporation was $15,000. That only $2,500 of it was paid up. That the president and secretary be impowered to sell the unsold stock and issue certificates of stock for same. On July 10, 1907, the following report was made:

"We sold the following stock at 40c:

G. H. Witte, Poteau....................100 shares $1,000
H. J. Fowler, Poteau....................100 shares  1,000
H. Denman, Midland....................100 shares  1,000
F. Bache, Fort Smith....................100 shares  1,000
J. M. Spradling, Fort Smith..............100 shares  1,000

and certificates in accordance therewith were issued and delivered. The amount in actual cash, $5,000, was received and paid into the treasury."

Defendant was not present at either of these meetings, and testifies he had no knowledge of either the resolution or the report.

The defendant testified that Judge Spradling told him that he had taken a lease on the Panama mine for $5,000 in the name

of the Witteville Coal Company, and he wished to know if Denman and defendant would not take the same interest in the new lease that they had in the old, viz.: a one-fifth interest each. That he took the matter up with Denman, who declined to invest any more money in the Witteville Coal Company. That he did not give Judge Spradling a definite answer about the matter until August, 1907, at which time, being in New York preparing to sail for Europe, he received a wire pressing him for a definite answer, and in response he wired Judge Spradling that he would take a two-fifths interest. That he paid for same by taking up Judge Spradling's note in bank for $2,000. That, upon his return some two months later, Judge Spradling handed him a certificate of stock in the Witteville Coal Company, which he put away, assuming it to represent the two-fifths interest that he had paid for. That he never examined the certificate until some time in 1908, when he had a conversation with Judge Spradling about the affairs of the company. He then found out that the certificate represented 100 shares of stock and the stock was not fully paid up.

Defendant testified that, had he known that stock of the face value of $5,000 was to be issued to him, he would not have purchased same. In short, he says that he thought he was purchasing stock fully paid up and non-assessable.

The Witteville Coal Company was adjudged a bankrupt on the 11th day of March, 1909, and Boyce L. Gulley as trustee in bankruptcy instituted this action as above stated. Other facts will be stated or referred to in the opinion.

The court decreed that the plaintiff should recover from defendant the sum of five hundred dollars, finding as follows:

"But the court doth find that said defendant did not intend to purchase more than $2,000 par value of said stock, and doth further find that 100 shares of stock were issued to him, delivered to him and stood upon the books of the company in his name; that said defendant is estopped to deny that he is the owner of same; and that there is a balance of $500 due on said 100 shares, but that said defendant is not liable for any other or greater amount."

The plaintiff has appealed.

*Falconer & Woods,* for appellant.

1. The trustee in bankruptcy is the proper party to collect unpaid stock subscriptions from stockholders of a bankrupt corporation. 91 U. S. 45, 56, 65; 3 A. B. R. 194; 14 *Id.* 349; 15 *Id.* 214; 70 Pac. 286; 1 Remington on Bankruptcy, § 976, p. 547; Cook on Stockholders, § 47.

2. Bache subscribed for 200 shares of stock. A contract of subscription is construed as any other contract, and the *intention* of the parties as evidenced by their acts will control. The evidence establishes the purchase. 1 Thompson (2 ed.) § § 545, 559; 1 Cook (6 ed.) § 52; 114 Ind. 381; 16 N. E. 642; 5 Am. St. 627; 11 Wis. 334; 78 Am. Dec. 709; 19 Wall. 241, 22 L. Ed. 83; 91 U. S. 56. A subscription need not be in writing. 1 Thompson (2 ed.), § 573; 77 Md. 92; 26 Atl. 113; 39 Am. St. 396; 72 S. W. 1125; 96 Va. 352; 31 S. E. 511.

3. The agreement to issue fully paid and non-assessable stock for less than its face value is void as against creditors, and the trustee can recover the difference between the face value and the amount actually paid in. 105 U. S. 143; 91 U. S. 56; *Id.* 45, 65; 14 Am. Bankr. Rep. 349; 15 *Id.* 214; 25 Am. St. 65; 54 L. R. A. 376; 109 Fed. 68; 35 N. J. Eq. 501; 79 N. W. 409; 54 Ark. 576; 71 *Id.* 379; 128 S. W. 1028; 133 *Id.* 828.

4. Spradling's testimony was admissible and conclusive. 1 Gr. Ev. (16 ed.) § 163, 164. Broad latitude is given on cross-examination. 16 Cyc. 1089; 16 Col. 103; 26 Pac. 331; 36 N. H. 575; 177 N. Y. 69; 36 N. H. 575, 580. Evidence taken before a referee satisfies the rule. 69 N. C. 548; 6 Ohio Dec. 834; 13 Pa. St. 90; 16 Cyc. 1095.

*Read & McDonough,* for appellee.

1. Defendant did not subscribe for any stock; he acquired an interest through his dealings with Spradling. He was not a stockholder. There is no contract unless the parties thereto assented, and they must assent *to the same thing in the same sense.* 1 Parsons on Cont. (9 ed.) p. 475. No one can be a stockholder without his consent. Thompson on Corp. (2 ed.), § § 545, 546; Morawetz on Corp. § 62. The consent must be *mutual. Id.* § 61, p. 59; 61 Atl. 481.

2. Pleadings were construed most strongly against the

pleader at common law, but the rule was abrogated by the Code. 31 Ark. 657.

3. The assets received by the corporation in exchange for stock were worth more than the stock issued. The Constitution recognizes the right to issue stock for property (Const. art. 12, § 8), and, in the absence of a statute requiring *cash,* the stock may be paid for in property. Thomp. on Corp. § 3965 (2 ed.); Cook on Stockholders (6 ed.) § 18; 79 Mo. 22; 45 Ore. 553; 78 Pac. 693. The only proviso is that there be no fraud and a fair value placed upon the property. Where the directors act in good faith, *no one* has a right to complain. 45 Ore. 553; 54 Fed. 569, 575; 119 U. S. 343.

4. Corporations sometimes have the right to sell stock at less than par. 119 U. S. 96; 139 *Id.* 118; *Ib.* 417.

5. The trust fund doctrine does not apply. 59 Ark. 562; 150 U. S. 371; Cook on Corp. (2 ed.) § 9; 143 Ind. 550; 42 Minn. 327; 48 *Id.* 174; Thompson on Corp. (2 ed.) § 3422.

6. Spradling's deposition was not competent, nor was that of Bache impeached.

HART, J., (after stating the facts). The contention of counsel for the plaintiff is that, because the board of directors of the Witteville Coal Company authorized the issuance and sale of $12,500 of capital stock, defendant purchased two-fifths of that amount of stock when he purchased a two-fifths interest.

They insist that their contention is sustained by the following quotation from the testimony of the defendant himself: "Q. Did you think you were acquiring a two-fifths interest in the company? A. Yes. Q. If, instead of losing money, the company had made $10,000, what would you have expected to receive for your interest? A. Two-fifths of it. Q. In that case would you have returned the certificate you did receive without asking for the two-fifths you say you were to receive? A. If the company had made money, I would most certainly have insisted on getting all that was coming to me."

We do not think so. It will be noted that defendant had no knowledge whatever of the passage of the resolution of July 2, 1907. He knew nothing whatever of the adoption of the report of July 10, 1907, showing that the stock had been sold for 40 cents on the dollar. On the contrary, it appears from his testi-

mony that he was purchasing stock at its par value. When he purchased an interest in the first venture, only $2,500 of capital stock had been subscribed and issued. Defendant purchased a fifth interest then and paid $500 for it. Now, 500 is one-fifth of 2,500, and when that lease was sold out defendant was given back his $500 and one-fifth of the profits of the venture. He was informed by Judge Spradling that the lease on the Panama mine and a stock of goods there, valued at $5,000, could both be purchased for $5,000. He understood that only $5,000 of stock would be issued and sold, and that he was purchasing a two-fifth interest in this. That $2,000 would give him two-fifths of this at par value is obvious. In this way his testimony is reasonable and consistent with itself, and is not contradicted. We think it fairly deducible from his testimony, when considered as a whole, that he understood that he was buying $2,000 of stock at its par value, and that it was fully paid and non-assessable. That he spoke of it as a two-fifths interest because he understood that only $5,000 in stock was to be issued and sold. It is evident that the defendant understood that only stock of the par value of $5,000 was to be issued and sold, and that when he purchased a two-fifths interest he intended and understood that he was purchasing two-fifths of this amount. This being true, the stock purchased by him was fully paid up.

A certificate for 100 shares of stock was issued to defendant, and delivered to him by Judge Spradling. Defendant says that he put the certificate away without looking at it, supposing it to represent the $2,000 of stock he had purchased. It appears that he never examined the certificate until some time afterward when he was informed by Judge Spradling that the corporation was in danger of becoming insolvent. Under these circumstances, the chancellor held that he was estopped from claiming that he had not subscribed for the whole 100 shares, and rendered judgment against him for $500, the balance due on said shares. Defendant prayed a cross-appeal; but he has not favored us with an argument on it, and his cross-appeal will be treated as abandoned.

2. It is insisted that the defendant in his answer admits his liability. We do not think so. The answer is lengthy, and we have not set it out. It contains, however, in substance the

matters which the defendant narrated in his testimony, and we have already held that it does not show that defendant was liable

3. When the cause was heard in the court below, Judge Spradling was dead, and plaintiff offered to introduce in evidence his deposition taken by the referee in bankruptcy, which the chancellor refused to consider. This was not error. The object of the examination there was to inquire generally into the affairs of the bankrupt corporation. The referee had no power to adjudicate the question at issue here, and no identity of issues exists. In order for the testimony to be admissible, the plaintiff must establish that the deposition was taken in a suit between the same parties regarding the same issues. *McTighe* v. *Herman,* 42 Ark. 285; 16 Cyc. pp. 1088-1094.

The decree will be affirmed.